UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
KEVIN HELDE, *et al.*,             )   No. C12-0904RSL
                                   )
            Plaintiffs,            )
                                   )
     v.                            )
                                   )   ORDER REGARDING MOTION
KNIGHT TRANSPORTATION, INC.        )   FOR CLASS CERTIFICATION
                                   )
            Defendant.             )
_____)

This matter comes before the Court on "Plaintiffs' Motion for Class Certification." Dkt. # 37. The three named plaintiffs seek to proceed with this litigation as representatives of a class, described as follows:

> All current and former employees of Knight Transportation who, at any time from June 18, 2008 through the date of final disposition, worked as drivers while residing in the state of Washington and using Knight's service center in Washington as their hometown location.

Plaintiffs allege that defendant failed to pay them for the hours spent in mandatory orientation, made unauthorized deductions from their wages, delayed payment of earned rate increases, and failed to pay them for all hours worked, in violation of the Washington Minimum Wage Act ("MWA"). In addition, plaintiffs allege that defendant deceptively advertised the wages paid its

ORDER REGARDING MOTION
FOR CLASS CERTIFICATION

drivers in violation of the Washington Consumer Protection Act ("CPA").[1]

**A. Adequacy of Class Definition**

Defendant argues that the use of the phrase "hometown location" in the proposed class definition makes the definition unworkable. At the end of June 2012, defendant closed its Washington terminal, transferring all management and dispatch operations to its Oregon facility. Although defendant continues to recruit and employ drivers licensed in Washington, retains ownership of the property in Kent, and allows drivers to park their trucks there at the end of their shifts, defendant no longer considers Kent one of its "hometown locations" and argues that it does not currently have any Washington-based drivers subject to the MWA. Thus, defendant argues, the class period must be confined to the period between June 2008 and June 2012 because any wage claims arising after that date are governed by Oregon's wage and hour laws.

Despite the importance of the choice of law issue for determining the appropriate class period, the parties' arguments regarding which law applies are conclusory. The parties cite to the same case, Bostain v. Food Exp., Inc., 159 Wn.2d 700 (2007), and reach opposite conclusions regarding the law that applies after July 1, 2012. In Bostain, the Supreme Court had to determine whether the commerce clause precluded application of the MWA's overtime provisions to hours spent driving outside the state of Washington. The court noted that "the MWA regulates only employers who are doing business in Washington and who have hired Washington-based employees." Bostain, 159 Wn.2d at 719. The court rejected defendant's argument that the application of Washington's wage law to a Washington resident based in Washington but driving in other states would burden interstate commerce to such an extent that it outweighed Washington's local interest in assuring proper compensation for its employees.

---

[1] At defendant's urging, the Court considered its motion for summary judgment before ruling on the class certification issues. Because the Court has dismissed plaintiffs' claims regarding the failure to pay overtime, the failure to pay for all miles actually driven, and the failure to provide meal and rest breaks, the Court need not determine whether those claims could have or should have been litigated on a classwide basis.

The court considered the state's interests in establishing "minimum standards of employment within the state of Washington" (RCW 49.46.005), the burdens an employer may face when administering different wage laws across its operations, and the locus of the employment relationship.

Although <u>Bostain</u> involved a commerce clause issue, many of the factors the court considered are also relevant when determining which state's wage act applies under a conflict-of-law analysis. <u>See, e.g.</u>, <u>Dow v. Casale</u>, 989 N.E.2d 909 (Mass. App. Ct. 2013) (applying "most significant relationship" test to determine that Florida resident employed by Massachusetts company as nationwide salesperson could seek benefits of Massachusetts law); <u>Panos v. Timco Engine Ctr., Inc.</u>, 677 S.E.2d 868 (N.C. App. 2009) (finding that North Carolina's interest in protecting its citizens did not justify application of North Carolina wage statute to California resident managing a Michigan facility for a North Carolina company); <u>McGoldrick v. TruePosition, Inc.</u>, 623 F. Supp.2d 619, 630-31 (E.D. Pa. 2009) (concluding that only employees "based in Pennsylvania" qualify for protection under that state's wage and hour laws and setting forth five relevant considerations: "(1) Employer's headquarters; (2) Employee's physical presence working in Pennsylvania; (3) Extent of employee's contact with Pennsylvania employer (i.e. reporting, direction, supervision, hiring, assignment, termination); (4) Employee's residence; (5) Employee's ability to bring his claim in another forum."). In most conflict of laws situations, Washington applies the "most significant relationship" test as set forth in the Restatement (Second) of Conflict of Laws. <u>Erwin v. Cotter Health Ctrs.</u> 161 Wn.2d 676, 693-94 (2007). Having considered (a) the undisputed facts regarding defendant's operations, including its advertising, hiring, and physical presence in Washington, and (b) the restrictions contained in plaintiffs' proposed class description, the Court finds that Washington has the most significant relationship to the facts giving rise to this litigation and that its wage law should apply throughout the class period.

ORDER REGARDING MOTION
FOR CLASS CERTIFICATION                    -3-

**B. Fed. R. Civ. P. 23(a)**

An individual who hopes to litigate a claim as a representative of a class must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Comcast Corp. v. Behrend, __ U.S. __, 133 S. Ct. 1426, 1432 (2013) ("[A] party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23.") (internal quotation marks omitted). Class certification is proper only if the Court concludes, after a "rigorous analysis," that the requirements are satisfied. Wang v. Chinese Daily News, Inc., __ F.3d __, 2013 WL 4712728, at *2 (9th Cir. Sept. 3, 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2552 (2011)).

**1. Numerosity**

Although defendant disputes the exact number of drivers who used its Washington service center during the class period, it does not challenge plaintiffs' contention that joinder of all class members would be impracticable. The Court finds that the numerosity requirement is satisfied.

**2. Commonality**

"What matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart, 131 S. Ct. at 2551 (alterations and internal quotation marks omitted). It is not enough to allege that defendant violated the same statute: the MWA, for example, can be violated in many ways based on any number of allegedly wrongful acts that could cause unrelated injuries. Plaintiffs must also show that all of the class members have suffered the same type of injury arising from a common wrongful act. "Their claims must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Having now reviewed defendant's motion for summary judgment, it is clear that there are common questions as to most of plaintiff's remaining claims that can productively be litigated en masse and which, once resolved, will either lead to dismissal of the claim or establish one of its central elements. With regards to the orientation claim, whether plaintiffs were employed for some or all of the time in which they participated in the mandatory orientation can be decided on a classwide basis and will determine whether defendant was obligated to pay for those hours. With regards to the per diem plan claim, determining whether the missing 2¢ per mile is a "deduction" from plaintiffs' wages, whether the deduction worked to the financial benefit of the employer, and whether defendant failed to openly and clearly record the deduction in its payroll records can all be decided on a classwide basis and will determine whether defendant violated various state regulations. With regards to the $1.00 charge for payroll advances,[2] whether the fee is a deduction from wages and whether defendant obtained the necessary authorizations for the deductions can be determined on a classwide basis and will resolve plaintiffs' claim under WAC 296-126-028(2). With regards to the non-driving work claim, whether defendant hired drivers based on a compensation system that combined dispatch miles and extra duty payments and whether that system uniformly results in pay that is no less than the equivalent of the minimum wage rate for each hour of work can be determined on a classwide basis and will resolve plaintiffs' claim under WAC 296-128-550.[3] With regards to the CPA claim, defendant has not conceded any of the elements of the claim, giving rise to common

---

[2] Plaintiffs have abandoned their "full value" claim in favor of the claim that the $1.00 fee associated with a payroll advance was not authorized in writing by the employees, in violation of WAC 296-126-028(2). Dkt. # 71 at 18-19.

[3] If the compensation system results in an hourly wage that hovers near the minimum required by the MWA, individualized calculations would be necessary to determine how many non-driving hours an employee worked in a given week and whether he or she were adequately compensated. In such circumstances, the only common question would be whether defendant hired drivers based on a compensation system that combined dispatch miles and extra duty payments. If that were the case, this claim may not qualify for class adjudication under the predominance analysis of Rule 23(b)(3).

ORDER REGARDING MOTION
FOR CLASS CERTIFICATION            -5-

1 issues regarding the nature and scope of its advertising in Washington, whether the advertising
2 was deceptive, whether plaintiffs suffered compensable injury to business or property, and
3 whether corrective statements offered during orientation vitiate any potential liability under the
4 CPA. Although the resolution of these common issues may not determine whether defendant is
5 liable under the CPA, it would certainly move the claim toward final resolution (assuming none
6 of the issues is decided in defendant's favor, in which case the classwide claim would be
7 dismissed).

8 Plaintiffs have not, however, shown that their penalty claims or their delayed
9 payment claims depend on common wrongful acts or policies. At most, plaintiffs have shown
10 that a single classmember was injured as a result of a demand for a rebate and/or a delay in
11 paying a merited performance pay increase.[4] Plaintiffs' bald allegations of wrongs committed
12 against the class are not supported: in fact, plaintiffs appear to be complaining about the mere
13 possibility that myriad charges, rebates, and fees might be assessed as well as potential delays in
14 payment that have no discernable common cause. The evidence in the record suggests that
15 defendant's objectionable conduct, if any, was ad hoc or, at the very least, non-uniform as to the
16 entire class. Plaintiffs have not established commonality as to the penalty and delayed payment
17 claims.

18 **3. Typicality and Adequacy**

19 "The test of typicality is whether other members [of the proposed class] have the
20 same or similar injury, whether the action is based on conduct which is not unique to the named
21 plaintiffs, and whether other class members have been injured by the same course of conduct."
22 Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks

23

24
25 [4] Defendant's contention that plaintiff Helde failed to provide evidence in support of his claim that there was a delay in receiving a performance bonus he had earned is unpersuasive. The document on which plaintiff Helde relies shows that his Silver performance evaluation was held on April 26, 2009, and that the reviewer found
26 a "Performance Pay Increase Merited." Decl. of Toby J. Marshall (Dkt. # 38), Ex. 7.

ORDER REGARDING MOTION
FOR CLASS CERTIFICATION                    -6-

omitted). Although defendant states generally that the named plaintiffs are not typical of the proposed class and/or will not adequately represent their interests (Dkt. # 58 at 3 and 8), it addresses these factors only with regards to the payroll card claim and the penalties claim (Dkt. # 58 at 19 and 21-22). Plaintiffs, none of whom opted to be paid via payroll card, have already abandoned the claim that use of the cards deprived employees of the "full value" of their wages. Plaintiff Helde, however, was charged a $1.00 fee for payroll advances that were allegedly not authorized in writing by the employee, in violation of WAC 296-126-028(2). With regards to this narrow claim, plaintiff Helde is typical and defendant has offered no reason to suspect that his interests will diverge from those of the class such that he may fail to adequately represent the absent class members. Plaintiff Helde may, therefore, proceed as the representative of the class to litigate the $1.00 deduction claim.

The Court has already determined that the penalties claim lacks common questions that would justify class treatment and therefore need not determine typicality as to that claim.

**C. Fed. R. Civ. P. 23(b)(3)**

Having determined that plaintiffs' proposed class satisfies the four elements of Fed. R. Civ. P. 23(a) with regards to the orientation claim, the per diem plan claim, the $1.00 charge for payroll advances claim, the non-driving work claim, and the CPA claim, the Court must determine whether certification is appropriate under Fed. R. Civ. P. 23(b)(3), which authorizes class certification if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

ORDER REGARDING MOTION
FOR CLASS CERTIFICATION         -7-

  (D)  the likely difficulties in managing a class action.

The analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Wang, 2013 WL 4712728, at *5 (internal quotation marks omitted).

  Determining whether the common questions identified above predominate over individual inquiries "begins, of course, with the elements of the underlying cause of action."  Erica P. John Fund, Inc. v. Halliburton Co., __ U.S. __, 131 S. Ct. 2179, 2184 (2011).  For each of plaintiffs' remaining claims, the Court finds that the common issues described above will resolve most of the elements of the causes of action and/or statutory claims asserted.  In order to calculate damages, however, individualized review of each class members' payroll and hour records will likely be necessary even if all common questions are resolved in plaintiffs' favor.  The documents submitted with the pending motions for class certification and summary judgment suggest that these calculations, while labor intensive and individualized, could be made based on existing records and would not necessarily require individual depositions or additional fact-finding.  In light of the ministerial nature of the damage calculations, the Court finds that the common questions related to the orientation, per diem plan, $1.00 charge for payroll advances, and non-driving work claims predominate over the individualized damages issues.  Classwide resolution of the common issues is superior to the filing of multiple and duplicative lawsuits and will result in the efficient and consistent resolution of overarching questions.  In addition, the Court finds that the nature of these claims and the lack of any other pending lawsuits suggest that the class' interests will be best protected through representative litigation, concentrating Washington state law claims in this forum is desirable, and the calculation of damages can be managed effectively despite its individualized nature.

With regards to plaintiffs' CPA claim, the individualized inquiry would involve not only a damage calculation, but also a determination of whether there is a causal link between the unfair and deceptive advertisements complained of and the injury suffered by each class member. <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 785 (1986) (requiring CPA plaintiffs to establish a causal link). Unlike the damage calculations discussed above, this inquiry would require testimony from each class member to determine what, if any, advertising he or she saw, whether the advertisement contained a representation regarding a per mile pay rate, whether the representation was false as to that class member, and whether, but for the misrepresentation, each class member would not have suffered an injury. <u>Schnall v. AT&T Wireless Servs., Inc.</u>, 171 Wn.2d 260, 277 (2001) (remanding to trial court for analysis of "causality element of plaintiffs' CPA claims under the 'but for' standard of proximate causation under WPI 15.01."). The Court finds that whatever efficiencies may be obtained by resolving the common issues related to plaintiffs' CPA claim on a classwide basis, they will be overwhelmed by the individual fact-finding such a claim would require on behalf of each class member.

For all of the foregoing reasons, the Court finds that plaintiffs' orientation, per diem plan, $1.00 charge for payroll advances, and non-driving work claims can and should be resolved on a classwide basis. Plaintiffs may not, however, seek a classwide resolution of their penalty, delayed payment, and CPA claims. The motion for class certification (Dkt. # 37) is therefore GRANTED in part and DENIED in part.

Dated this 9th day of October, 2013.

*MMT S Lasnik*

Robert S. Lasnik
United States District Judge