UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
KEVIN HELDE, *et al.*,                    )    No. C12-0904RSL
                                          )
                    Plaintiffs,           )
        v.                                )
                                          )    ORDER REGARDING NON-DRIVING
KNIGHT TRANSPORTATION, INC.               )    TASKS AND REST BREAK CLAIMS
                                          )
                    Defendant.            )
_____)

This matter comes before the Court on "Defendant Knight Transportation, Inc.'s Motion for Partial Summary Judgment" (Dkt. # 145) and "Plaintiffs' Motion for Partial Summary Judgment" (Dkt. # 147). The parties seek a summary determination of whether Knight's compensation system fails to pay drivers for (a) time spent performing non-driving tasks and (b) rest breaks.

Summary judgment is appropriate when there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS

trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The non-moving party may not avoid summary judgment simply by filing an affidavit that disputes its own prior statements or contains nothing more than conclusory allegations unsupported by factual data. See Nelson v. City of Davis, 571 F.3d 924, 927-28 (9th Cir. 2009); Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

**A. Non-Driving Tasks**

Washington's Minimum Wage Act ("MWA") provides flexibility in negotiating the method and amount of compensation in an employment relationship. For purposes of this motion, as long as the employer pays its employees the equivalent of the minimum wage rate for each hour of work, the parties are free to establish a salary, commission, piece rate, hourly rate, or other system of compensation. WAC 296-128-550. See also Inniss v. Tandy Corp., 141 Wn.2d 517, 531 (2000) (upholding employer's choice "not to calculate the regular rate as 'hourly rate' but as a ratio of weekly base salary to total hours worked in a workweek. The Washington Minimum Wage Act permits this choice."). Washington regulations specify how the

minimum wage calculation is performed if a compensation scheme other than an hourly wage is used. Pursuant to WAC 296-126-021, if an employee is paid solely by the piece, the wages earned in a week are divided by the total number of hours worked during that period: the resulting wage must be no less than the established minimum wage rate. If an employee earns both piece rate and other forms of compensation, the total wages earned in the week are added together and then divided by the total number of hours worked to determine whether the minimum wage requirement is satisfied. Id. "An employer must pay minimum wage, regardless of any employee agreements to work for less." Wash. DLI Admin. Policy ES.A.5.

Plaintiffs are paid predominately on a piece rate basis, with some additional compensation provided for specified tasks. Despite the analytical framework provided by WAC 296-126-021, plaintiffs make no attempt to show that their total wages earned in a week average out to less than the minimum wage. Rather, they argue that Washington law imposes an obligation to pay for each "hour of work," and that, because Knight's piece rate is based on a per-mile calculation, it covers only hours spent driving. Thus, the argument goes, plaintiffs were paid $0.00 per hour for the time spent on non-driving tasks in violation of the minimum wage requirement. Plaintiffs' underlying assumption is faulty: the MWA does not require payment on an hourly basis. Plaintiffs' reliance on references in statutes, regulations, and cases to the payment of wages "per hour" or "for each hour of work" is misplaced. Those references do not mandate that every employer utilize an hourly compensation scheme: as noted above, salaries, commissions, and piece rate systems are all permissible under the MWA. The only relevant limitation is that whatever compensation scheme is agreed upon, it must result in a wage that is the equivalent of the minimum hourly wage. For piece rate workers, WAC 296-126-021 provides for the averaging of all amounts paid in a week over all hours worked in that same period to determine

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                -3-

whether the amount paid is equivalent to the minimum wage rate.[1] Having eschewed the analytical framework provided by the governing regulations, plaintiffs have not shown a violation of the MWA with regards to payment for the non-driving tasks.

Plaintiffs argue that an averaging methodology is contrary to the remedial purposes of the MWA and leaves employees susceptible to abuse because an unscrupulous employer could "require a driver to spend an uncompensated hour at the end of each day shining the supervisor's shoes so long as the per-mile pay for driving resulted in at least minimum wage for all hours worked when averaged over the week." Dkt. # 149 at 23-24. Chapter 49.46 is not a broad-ranging remedial statute, however. As declared by the legislature, its purpose is to "establish a minimum wage for employees of this state to encourage employment opportunities within the state." RCW 49.46.005. As long as an employee is paid the equivalent of the established minimum wage under the averaging methodology set forth in the regulations, the MWA is satisfied.

As for plaintiffs' concerns regarding unscrupulous employers, the MWA is not the only protection available to Washington employees. Under the Wage Rebate Act, an employer is also required to satisfy any wage obligations it assumed through contract. RCW 49.52.050(2). An offer of employment to perform certain services in exchange for specified compensation cannot simply be ignored or changed at the employer's whim without risking significant penalties under RCW 49.52.070. Thus, if the parties negotiated a straight per-mile compensation scheme and Knight then demanded that its drivers accept less per mile and allocate the remainder to non-driving tasks, plaintiffs would have a claim under the Wage Rebate Act. The evidence in this case does not, however, support such a claim. Knight offers employment opportunities through a

---

[1] The California cases on which plaintiffs rely are distinguishable on this ground. The California Labor Code, unlike the MWA and the Fair Labor Standards Act, does not allow the averaging of all pay received and hours worked in a week to compute the equivalent hourly rate. See Armenta v. Osmose, Inc., 135 Cal App.4th 314, 324 (2005).

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                    -4-

pre-trip proposal that specifies the compensation for hauling and delivering a load, plus any additional pay associated with activities deemed "non-routine," such as border crossings, extra stops, or the transport of hazardous materials. Although the base compensation for the trip is calculated by multiplying an estimate of the miles driven by the driver's per-mile rate (with an added premium for short hauls), the parties understand that the base amount serves as compensation for various tasks associated with hauling and delivering the load, not simply for driving. There is no evidence that a driver was ever caught unawares that he or she would have to prepare for vehicle inspections, secure the load, refuel, perform maintenance duties, wait a reasonable period for customers to accept deliveries, or fill in paperwork. These aspects of the employment arrangement with Knight were disclosed during orientation, and the pre-trip proposal specified which, if any, non-driving tasks garnered additional compensation. While one could imagine a different system – for example, Knight could hire hourly employees to work at the terminal and perform the loading, maintenance, cleaning, and paperwork duties – there is really no dispute regarding the nature of the arrangement that is offered and accepted when a driver agrees to a load proposal from Knight.

Based on the evidence in the record, a reasonable jury could not conclude that Knight failed to pay the equivalent of the established minimum wage rate or deprived its drivers of wages due under their compensation agreement.

**B. Rest Breaks**

Defendant argues that the same analysis should apply to plaintiffs' claim for paid rest breaks based on Mr. Quast's declaration that the pre-trip proposal included compensation for rest breaks as well as the routine non-driving tasks discussed above. This argument fails on the facts and on the law. Mr. Quast offers no basis on which to conclude that he has personal knowledge regarding whether Knight took Washington State's rest break requirement into consideration when developing its compensation scheme. This requirement, unlike all of the other tasks listed

by Mr. Quast, is antithetical to the goal of hauling and delivering loads insofar as it mandates a period of inactivity during which no tasks can be performed and no miles can be traversed. There is no reason to presume that either Knight or the drivers *sub silentio* lumped the absence of work in with the operational activities. In addition, the requirement is Washington specific, and there is no indication that Knight's compensation scheme was created or subsequently adjusted with the laws of Washington in mind. Until very recently, Knight took the position that the rest break regulation did not apply to its operations because it was preempted. Mr. Quast's prior declarations suggested that Knight made no provision for the required rest breaks and argued that to do so would reduce a driver's productive time by approximately thirty minutes for each break and would make drivers unavailable to do pickups and deliveries two or three times a day. Decl. of Kevin Quast (Dkt. # 57) at ¶¶ 27-28 and 34. The assertion that Knight's pre-trip proposal included compensation for rest breaks is not supported by admissible evidence and, in fact, is affirmatively disproved by the remainder of the record.

Even if Knight's pre-trip offer made clear that the compensation amount included payment for rest breaks, the Washington Supreme Court's decision in Demetrio v. Sakuma Bros. Farms, 183 Wn.2d 649 (2015), would invalidate such an agreement. If an employee is paid by piece rate, the court held that the plain language of WAC 296-131-020(2) and case law applying Washington's labor policies require that employers "pay a wage separate from the piece rate for time spent on rest breaks." Sakuma Bros., 183 Wn.2d at 659. Otherwise, the rest break is not "on the employer's time" because any period of inactivity would be funded out of the wages the employee had already earned by the piece. Such a system would create an economic incentive to skip breaks, since they are in effect unpaid or self-funded.

Knight's attempts to distinguish Sakuma Bros. are unavailing. The language that the Supreme Court found compelling – "on the employer's time" – appears in both WAC 296-131-020(2) (which applies to agricultural workers) and WAC 296-126-092(4) (which applies to Knight's employees). In fact, the court noted that WAC 296-131-020(2) was patterned after

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                        -6-

WAC 296-126-092(4) and relied on a number of cases interpreting the more general rest break regulation to reach its conclusion that rest breaks must be compensated separately from the piece rate. 183 Wn.2d at 656-59. Nor does the fact that Knight's operation arguably involves bigger and fewer "pieces" change the analysis. If rest periods are unpaid or self-funded, there is an incentive to skip them regardless of how few or how many pieces an employee can generate in a day. Skipping rest breaks during the first three days of the week may enable the driver to take an additional assignment toward the end of the week. Any "payment schemes that incentivize missed rest breaks at the expense of the employee's health" are forbidden, an issue that is of particular concern when the employee is at the helm of a large vehicle on the public highways. 183 Wn.2d at 658-59. Knight's chosen compensation scheme, far from encouraging employees to take their rest breaks, puts the onus on the employee to self-fund their breaks in violation of Washington law.

Finally, WAC 296-126-021 does not compel a different result in this case. Knight reads too much into a single word, "wholly," when it argues that the general rest break regulation cannot be read to compel separate compensation apart from the piece rate because WAC 296-126-021 authorizes employers to pay "wholly" on a commission or piecework basis. If separate, non-piece compensation is required, Knight argues, the word "wholly" would become superfluous because employees would not be paid solely on a piecework basis. The cited regulation explains how one converts a commission or piece rate compensation scheme into the equivalent of an hourly wage. It applies to anyone paid under those schemes, wholly or in part. There is no indication that the agency intended to compel a single payment scheme in any particular instance or to create exemptions from other regulatory requirements simply because a piece rate system is used. More to the point, Sakuma Bros. in no way makes the word "wholly" superfluous. An employee who works less than four hours a day on a piece rate basis will still be paid "wholly" by the piece. Knight's strained interpretation of WAC 296-126-021 as an affirmative bar on separate pay for rest breaks for non-agricultural workers is unreasonable.

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                  -7-

**C. Retroactive Application**

Knight argues that, if <u>Sakuma Bros.</u> applies and it must separately pay its employees for rest breaks, the obligation should not apply retroactively. Under Washington law, the general rule is that a new decision applies retroactively to both the litigants before the court and in subsequent cases. <u>McDevitt v. Harbor View Med. Ctr.</u>, 179 Wn.2d 59, 74-75 (2013). A decision will be given only prospective effect in the rare cases where "(1) the decision established a new rule of law that either overruled clear precedent upon which the parties relied or was not clearly foreshadowed, (2) retroactive application would tend to impede the policy objectives of the new rule, and (3) retroactive application would produce a substantially inequitable result." <u>Lunsford v. Saberhagen</u>, 166 Wn.2d 264, 272 (2009) (citing <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97, 106-07 (1971)).

The Court finds that the general rule applies in this case. <u>Sakuma Bros.</u> did not overrule clear precedent regarding the interplay between a piece rate compensation scheme and the rest break requirement. Although one could argue that the outcome in <u>Sakuma Bros.</u> was not clearly foreshadowed, the existing case law regarding rest breaks, as thoroughly discussed by the Supreme Court, was not supportive of Knight's compensation system. Retroactive application of the requirement would in no way impede the policy objectives that drove the <u>Sakuma Bros.</u> decision or WAC 296-126-092(4). As between the employer who created a system where employees self-funded (or skipped) their rest breaks on the one hand and the employees who were deprived of wages they were due on the other, there is no inequity in requiring Knight to pay plaintiffs their back wages.

For all of the foregoing reasons, defendant's motion for partial summary judgment (Dkt. # 145) is GRANTED in part and DENIED in part and plaintiffs' motion for partial summary judgment (Dkt. # 147) is GRANTED in part and DENIED in part. Plaintiffs have failed to raise a genuine issue of fact regarding their statutory or contractual claims for separate compensation

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS			-8-

1 for routine non-driving tasks. That claim is hereby DISMISSED. Defendants have failed to raise
2 a genuine issue of fact regarding their obligation to separately compensate plaintiffs for their rest
3 breaks. Its liability for unpaid rest breaks is therefor established: damages on that claim will be
4 determined at trial.

6      Dated this 26th day of April, 2016.

*[signature]*

Robert S. Lasnik
United States District Judge